**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **LEONARDO DE LA VEGA, JOSE ROJAS, JAIME RUIZ, AND ELIJAH SANTIAGO,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **WESAM S. ALI, CHARLES F. BEST, SAMANTHA V. BROWN, CHARLES A. DAVIS, KEVIN J. DOYLE, WENDY DYBAS, MARCUS HARDY, JOHN HURST, KAREN D. FRYER, RANDY J. MALKOWSKI, CHRISTOPHER L. RENTERIA, RHODESIA E. WATSON, AND OTHER UNIDENTIFIED STATEVILLE CORRECTIONAL CENTER OFFICERS AND STAFF, IN THEIR INDIVIDUAL CAPACITIES,** | )  **Civil Action No. 13-cv-_____** |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

Plaintiffs, Leonardo De La Vega, Jose Rojas, Jaime Ruiz, and Elijah Santiago (collectively, "Plaintiffs"), by and through their attorneys, Latham & Watkins LLP, allege for their Complaint against Defendants Wesam S. Ali, Charles F. Best, Samantha V. Brown, Charles A. Davis, Kevin J. Doyle, Wendy Dybas, Marcus Hardy, John Hurst, Karen D. Fryer, Randy J. Malkowski, Christopher L. Renteria, Rhodesia E. Watson, and Unidentified Stateville Correctional Officers and Staff (collectively, "Defendants"), hereby state as follows:

## NATURE OF THE ACTION

1.  On October 6, 2012, a correctional lieutenant at Stateville Correctional Center harassed an inmate and knocked him unconscious, setting off a series of events in which Stateville staff and contractors hit, kicked, stomped on, and used chemical spray on several

inmates. Stateville staff and contractors then denied those inmates medical treatment, and in several instances filed disciplinary charges against the inmates in an apparent effort to cover up the abuses resulting from the first correctional lieutenant's actions.

2.      Specifically, Defendant Charles A. Davis provoked, and then knocked unconscious, Plaintiff Elijah Santiago. Defendant Davis then attempted to punch Plaintiff Jose Rojas, and a fight ensued. At this point, several other correctional officers rushed into the area and indiscriminately sprayed Mr. De La Vega, Mr. Rojas, Mr. Ruiz, and Mr. Santiago with chemical spray, often several times and while the plaintiffs were on the ground, restrained, or both. These correctional officers then physically abused the plaintiffs by hitting, kicking, stomping, and dragging them. The plaintiffs did nothing, and indeed could not have done anything, to warrant this abuse.

3.      After punching, kicking, beating, spraying, and otherwise injuring Plaintiffs, several Defendants denied Plaintiffs medical attention or treatment. In an attempt to cover up their uses of excessive force, several Defendants prepared disciplinary reports falsely stating that Plaintiffs initiated the incident by attacking one or more Defendants, provided false testimony against some or all Plaintiffs, or both.

4.      This is a civil action seeking a declaratory judgment and damages pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, for violations of Plaintiffs' rights protected by the First, Eighth, and Fourteenth Amendments to the Constitution of the United States. Plaintiffs bring pendent state law tort claims based on the same events.

## THE PARTIES

**A.      Plaintiffs**

2

5.      At all relevant times, Plaintiffs were incarcerated at Stateville Correctional Center in
        Joliet, Illinois, operated by the Illinois Department of Corrections ("IDOC").

**B.      Defendants**

6.      At all relevant times, Defendants Wesam S. Ali, Charles F. Best, Samantha V. Brown,
        Charles A. Davis, Kevin J. Doyle, Wendy Dybas, Marcus Hardy, John Hurst, Karen D.
        Fryer, Randy J. Malkowski, Christopher L. Renteria, and Rhodesia E. Watson were
        employed by the IDOC at Stateville Correctional Center.  Defendants Best, Brown,
        Davis, Hurst, Malkowski, and Watson were correctional lieutenants at Stateville
        Correctional Center.  Defendants Ali, Renteria, and Doyle were correctional officers at
        Stateville Correctional Center.  Defendant Dybas was a nurse at Stateville Correctional
        Center.  Defendant Fryer was a medical technician at Stateville Correctional Center.
        Defendant Hardy was a warden at Stateville Correctional Center.

7.      Defendants Dybas, Fryer, Hardy, Watson, and other Unidentified Defendants were
        present in the Health Care Unit and are referred to as the "HCU Defendants" herein.

8.      Plaintiffs do not know the first names, last names, or both of several Defendants.  Those
        Defendants include correctional officers (of any rank, including "officers," "lieutenants,"
        "majors," and others), medical staff (potentially including contractors), and other
        Stateville Correctional Center staff and/or contractors (collectively, "Unidentified
        Defendants").  In some instances, Unidentified Defendants may include named
        Defendants whose identities could not be ascertained.  References to "Defendants"
        include named Defendants and Unidentified Defendants.  Plaintiffs expect to obtain the
        identities of Unidentified Defendants through discovery.

9.     All Defendants are being sued in their individual capacities.  At all relevant times and in all of their actions, Defendants were acting under color of law and pursuant to their authority as prison officials.

## JURISDICTION AND VENUE

10.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because it is a civil action arising under the First, Eighth, and Fourteenth Amendments to the Constitution of the United States.  Plaintiffs seek damages for injuries resulting from the deprivation of rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

11.    This Court may exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise out of the same case, controversy, or nucleus of operative fact as their federal claims.

12.    Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391, because all of the relevant events at issue occurred at Stateville Correctional Center, located in Will County, Illinois, which is located in the Northern District of Illinois.

## FACTUAL ALLEGATIONS

### Defendant Davis and Others Attack Plaintiffs

13.    In October 2012, Plaintiffs were housed in F Cell House at Stateville Correctional Center.

14.    On October 6, 2012, around 7 p.m., Plaintiffs and other inmates were taken out of their cells and allowed to walk to the dining area, commonly referred to as the Chow Hall, for dinner.

15. Once inside the Chow Hall, Plaintiffs and other inmates assembled into two lines on either side of the area. All of the Plaintiffs, along with other inmates, went to the same line on one side of the Chow Hall.

16. Defendant Davis directed several inmates, including Mr. De La Vega, Mr. Rojas, Mr. Ruiz, and Mr. Santiago, to move from the line in which they were standing to the line on the other side of the Chow Hall.

17. Plaintiffs all attempted to comply with Defendant Davis's instruction.

18. The following recitation of facts is presented chronologically with respect to each Plaintiff. Many of the events described for different Plaintiffs happened concurrently, but are broken out by Plaintiff for the convenience of the Court.

### *Mr. Elijah Santiago*

19. Mr. Santiago took one step toward the other line and Defendant Davis approached him and chest-bumped him, causing contact between Defendant Davis's chest and Mr. Santiago's chest. Mr. Santiago attempted to take another step around Defendant Davis in order to follow Defendant Davis's instruction to move to a different line, but Defendant Davis again chest-bumped Mr. Santiago. Defendant Davis chest-bumped Mr. Santiago a third time as Mr. Santiago attempted to take a third step in compliance with Defendant Davis's instruction.

20. Mr. Santiago then stopped and attempted to tell Defendant Davis that Defendant Davis did not need to push him. Before Mr. Santiago could complete this statement, and without warning or provocation, Defendant Davis punched Mr. Santiago in the face with a closed fist, knocking Mr. Santiago unconscious and to the ground.

21.     After Mr. Santiago regained consciousness, and while he lay unmoving on the ground, he observed Defendant Best pointing a can of Mace or pepper spray (collectively referred to as "Mace" herein) at him.

22.     Defendant Best said "spray all the Latinos" before spraying Mr. Santiago in the face with Mace at least once. Mr. Santiago thereafter was unable to see or move due to his injuries. An Unidentified Defendant then handcuffed Mr. Santiago.

23.     Mr. Santiago heard an Unidentified Defendant tell him to get up, but another Unidentified Defendant said "drag this spic out of here" and one or more Unidentified Defendants then dragged Mr. Santiago across the ground and out of the Chow Hall.

24.     Mr. Santiago also heard an Unidentified Defendant shout "beat the fuck out of these spics" shortly before he was dragged out of the Chow Hall.

25.     Prior to October 6, 2012, Plaintiff Santiago filed grievances relating to staff conduct and harassment at Stateville Correctional Center. On information and belief, Defendants were aware of these grievances and attacked Mr. Santiago in retaliation.

### *Mr. Jose Rojas*

26.     After Defendant Davis knocked Mr. Santiago unconscious, Defendant Davis attempted to punch Mr. Rojas.

27.     Mr. Rojas, acting in self-defense, struck Defendant Davis.

28.     Defendant Davis then tackled Mr. Rojas, and both fell to the ground.

29.     Around this time, an Unidentified Defendant fired a gun from a guard tower.

30.     Mr. Rojas was first to rise from the ground and Defendant Hurst then sprayed Mr. Rojas with Mace for several seconds.

31.   Defendant Best joined Defendant Hurst and they both sprayed Mr. Rojas with Mace a second time.

32.   Defendants Best and Hurst then tackled Mr. Rojas to the ground.  They then handcuffed Mr. Rojas's hands behind his back and pinned him to the ground.

33.   Mr. Rojas remained handcuffed on the ground while several Unidentified Defendants repeatedly punched and kicked him on his head and body.

34.   Defendants Hurst and Davis sprayed Mr. Rojas with Mace a third time while Mr. Rojas was on the ground.

35.   An Unidentified Defendant repeatedly hit Mr. Rojas on the back of the head with a hand-held radio, while calling him a "spic" and a "fucking Mexican."

36.   Mr. Rojas was then dragged 30 to 40 feet from the scene of the incident to the entrance of the Chow Hall.

37.   Mr. Rojas could not see due to being repeatedly sprayed with Mace in his eyes. His skin was burning everywhere he had been sprayed with Mace and everywhere it had spread. He was also in extreme pain as a result of the multiple kicks and punches to his head and body.

### Mr. Leonardo De La Vega

38.   Mr. De La Vega attempted to move away from the above-described altercations, at which time Defendant Best sprayed him in the face with Mace.

39.   Mr. De La Vega then immediately lay down on the floor.  While Mr. De La Vega was lying on the floor, Defendant Malkowski sprayed Mr. De La Vega with Mace, directly and intentionally in Mr. De La Vega's mouth.

40.   An Unidentified Defendant handcuffed Mr. De La Vega behind his back as he remained lying on the floor, after which another Unidentified Defendant sprayed Mr. De La Vega a third time in the face and the back of the head with Mace.

41.   Mr. De La Vega was dripping with Mace. He could not see as a result of being repeatedly sprayed with Mace in his eyes. The Mace covered approximately 80% of Mr. De La Vega's upper body and burned everywhere it spread. He was in extreme pain as a result of these injuries.

   ***Mr. Jaime Ruiz***

42.   Mr. Ruiz moved to another line in the Chow Hall before Defendant Davis confronted and punched Mr. Santiago.

43.   Mr. Ruiz heard a shot fired from a guard tower and ducked down toward the ground.

44.   Mr. Ruiz then observed many correctional officers entering the Chow Hall and spraying inmates with Mace. Mr. Ruiz was not initially targeted, but was hit with Mace on his neck and shoulder. Mr. Ruiz moved toward a railing to avoid being sprayed with Mace.

45.   An Unidentified Defendant told Mr. Ruiz to move toward a gate, and Mr. Ruiz did.

46.   Once Mr. Ruiz reached the gate, an Unidentified Defendant held Mr. Ruiz against the gate. Within one minute of being held against the gate, Mr. Ruiz was sprayed in the face with Mace. Given the angle of Mr. Ruiz's face against the gate, whomever sprayed Mr. Ruiz must have intended to spray him in the face.

47.   An Unidentified Defendant ordered Mr. Ruiz to get on the floor, and Mr. Ruiz complied.

48.   While Mr. Ruiz was on the floor, an Unidentified Defendant repeatedly punched and stomped on Mr. Ruiz's head. Mr. Ruiz attempted to protect his head with his hands and arms.

8

49.     An Unidentified Defendant sprayed Mr. Ruiz with Mace while Mr. Ruiz was on the floor.

50.     Mr. Ruiz's eyes were burning and he was unable to see as a result of being repeatedly sprayed in the face with Mace. His skin was burning everywhere the Mace had been sprayed and had spread. He was in extreme pain, particularly on his head and hands as they had received the brunt of numerous kicks from the Defendants.

### *Defendants*

51.     During these attacks, Defendant Best yelled, "Get all the Latinos," "spray every fucking Latino," and/or some variation on those two phrases.

52.     During these attacks, numerous defendants were present in the Chow Hall, including Defendants Ali, Best, Davis, Doyle, Hurst, Malkowski, Renteria, and other Unidentified Defendants. These defendants could have intervened but failed or refused to do so.

### **HCU Defendants Refuse to Provide Medical Treatment**

#### *Initial Refusals to Provide Treatment*

53.     As a result of Defendants' actions described above, each Plaintiff suffered visible and obvious injuries, including cuts, scrapes, and continuing exposure of skin and mucus membranes to Mace.

54.     Mr. Ruiz suffered a fractured finger and a laceration requiring stitches in attempting to protect his head from Defendants' attacks.

55.     Mr. Santiago suffered from headaches, dizziness, and severe pain in his neck, elbows, wrist, and left shoulder as a result of the assault. These ailments continued for several months after the assault.

56.     Mr. Rojas had deep scratches on the back of his neck. His lips, left eye, and ribs were bruised. He also suffered swelling to his head, especially on his upper and lower lips.

Mr. Rojas could not open his jaw and also suffered spells of dizziness for several days following the incident.  He was also hit near his ankle on his right leg, aggravating a previous injury to that area.

57. Mace covered the faces and bodies of each Plaintiff, causing a painful burning sensation. All of them had been sprayed with Mace in their eyes, causing loss of vision and more pain.  Mr. Santiago, Mr. Rojas, and Mr. Ruiz had difficulty moving as a result of punches and kicks to their heads and bodies.

58. Plaintiffs were taken to the Health Care Unit ("HCU") shortly after the incident, where they were held in holding cells and denied treatment.

59. HCU Defendants—Defendants Dybas, Fryer, Watson, Hardy, and other Unidentified Defendants—were all present in the HCU.

60. While in the HCU, each Plaintiff requested medical treatment several times.  HCU Defendants refused to provide, or allow to be provided, some or all medical treatments requested by Plaintiffs, including not permitting Plaintiffs to rinse the Mace from their eyes or bodies.

61. On information and belief, Defendant Watson affirmatively instructed other HCU Defendants not to provide treatment to Plaintiffs.  Defendant Watson also told Plaintiffs, in response to their requests for help, "I'm not going to do shit for you."

62. Defendant Fryer told Mr. De La Vega that she did not have any "say so," that she was instructed not to treat him and the other inmates, and that she could not provide medical treatment or attention to Plaintiffs because of Defendant Watson and Unidentified Defendants.

10

63.     Defendant Hardy and Unidentified Defendants walked through the HCU, during which time Mr. De La Vega told Defendant Hardy he was in pain and requested medical attention.  Defendant Hardy ignored Mr. De La Vega and, despite the fact that each Plaintiff had injuries clearly requiring treatment, Defendant Hardy did nothing to ensure that any of the Plaintiffs received medical attention.

64.     Plaintiffs remained in the HCU holding cells without being treated for approximately two hours.

65.     During this time, Plaintiffs were not permitted to shower or adequately rinse themselves in order to remove Mace from their bodies.  Plaintiffs ultimately were not able to shower and adequately rinse the Mace off of their bodies for days or weeks.

66.     Mr. De La Vega had trouble breathing due to the excessive amount of Mace sprayed in his face and mouth.  He was briefly hooked up to an assisted breathing apparatus, but the HCU Defendants took him off the ventilator quickly thereafter, despite the fact that he was still having trouble breathing.

67.     An Unidentified Defendant visually inspected Mr. De La Vega through the bars of a holding cell and, on information and belief, observed the amount of Mace on Mr. De La Vega.

68.     Mr. Rojas and Mr. Santiago were given eye drops a few minutes after the incident.

69.     Mr. Ruiz was given eye drops while in the HCU, but not until roughly two hours after he had been sprayed with Mace.

70.     In all cases, the eye drops provided minimal relief as Plaintiffs were not permitted to rinse their eyes or bodies of the Mace.

11

71.     All of the Plaintiffs were strip-searched.  Because they had been denied treatment or an opportunity to rinse off the Mace on their bodies, the commands given during the strip searches caused the Mace on some Plaintiffs' bodies and clothing to spread to other parts of their bodies, including their genitals.

*Lasting Effects*

72.     Around midnight, Mr. De La Vega, Mr. Rojas, and Mr. Santiago were transferred to Pontiac Correctional Center in Pontiac, Illinois.  They were not given an opportunity to rinse off the Mace on their bodies until they were in cells and had access to sinks, and were not permitted to shower and properly rinse off the Mace for between several days and two weeks.

73.     Mr. Ruiz was subsequently taken to an outside hospital, where an x-ray revealed a phalangeal fracture to his left index finger.

74.     Mr. Ruiz was transferred to Pontiac Correctional Center following his visit to the outside hospital, and also was not given an opportunity to rinse off the Mace on his body until he was in a cell and had access to a sink.

75.     Mr. Santiago suffered headaches, pain in his neck and arms, and dizziness for two or three months following the incidents at Stateville.

76.     Stateville Correctional Center in Joliet, Illinois, is between one and two hours' drive from Pontiac Correctional Center in Pontiac, Illinois.  Plaintiffs were forced to endure ongoing pain from the Mace on their bodies while being transported between Stateville Correctional Center or the outside hospital and Pontiac Correctional Center.

77.     As a result of prolonged contact with Mace, Plaintiffs experienced burning sensations and pain everywhere the Mace had spread for several days following the incident.

### Defendants File Charges and Provide False Testimony to Cover Up Incidents

78.   On information and belief, some Defendants filed disciplinary charges and provided false

testimony against some or all Plaintiffs to cover up the above-described events.

79.   Mr. De La Vega, Mr. Rojas, and Mr. Ruiz were given disciplinary reports charging them

with Assaulting Any Person and Dangerous Disturbances.  All three were found guilty of

these charges without the Adjustment Committee reviewing the video of the incident.  All

three subsequently filed grievances appealing their convictions.

80.   Mr. De La Vega's convictions were expunged.

81.   Mr. Ruiz's convictions were expunged.

82.   Mr. Rojas's convictions were affirmed.  He was given one year in segregation, one year

of audio/visual restriction, six months of contact visits restriction, and one year of C

grade, and he lost one year of good conduct credit.

83.   Mr. Santiago was not charged with any violations.  Mr. Santiago was given a Computer

Voice Stress Analyzer test, which indicated that he was telling the truth when he made

six key statements: (a) Defendant Davis struck Mr. Santiago in the face; (b) Mr. Santiago

did not threaten Defendant Davis before Defendant Davis struck him in the face; (c) Mr.

Santiago did not have his fists clenched or in a fighter's stance before Defendant Davis

struck him in the face; (d) Mr. Santiago never struck Defendant Davis; (e) Mr. Santiago

never pushed Defendant Davis; and (f) Mr. Santiago was lying on the ground when

Defendant Best sprayed him with Mace.

### Defendants Violate IDOC Policies and Procedures

84.   On information and belief, some or all of Defendants' actions were in violation of IDOC

policies and procedures.

13

## CAUSES OF ACTION

### Count I

**Excessive Force Claim by All Plaintiffs Against All Defendants Other Than HCU**

**Defendants in Violation of 42 U.S.C. § 1983**

85.     Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 84 above.

86.     Defendants Best, Davis, Malkowski, Hurst, and Unidentified Defendants used excessive, extreme, and unreasonable force against Plaintiffs by punching Plaintiffs, kicking Plaintiffs, stomping on Plaintiffs, hitting Plaintiffs with objects, and/or spraying Plaintiffs with Mace.

87.     Defendants Best, Davis, Malkowski, Hurst, and Unidentified Defendants deprived Plaintiffs of their right to be free from cruel and unusual punishment, and recklessly and callously disregarded Plaintiffs' rights.

88.     At all relevant times, Defendants Best, Davis, Malkowski, Hurst, and Unidentified Defendants acted under color of state law.

89.     Defendants Best's, Davis's, Malkowski's, Hurst's, and Unidentified Defendants' uses of force were not good-faith efforts to maintain or restore discipline, but rather were malicious and sadistic acts intended to cause Plaintiffs harm.

90.     As a result of Defendants Best's, Davis's, Malkowski's, Hurst's, and Unidentified Defendants' uses of excessive force, Plaintiffs suffered unnecessary and wanton infliction of pain and severe mental and emotional distress.

### Count II

**Battery Claim by All Plaintiffs Against All Defendants Other Than HCU Defendants in**

**Violation of Illinois Law**

14

91.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 84 above.

92.    Defendants Best, Davis, Malkowski, Hurst, and Unidentified Defendants intentionally and successfully committed violence against Plaintiffs by punching Plaintiffs, kicking Plaintiffs, stomping on Plaintiffs, hitting Plaintiffs with objects, and/or spraying Plaintiffs with Mace.

93.    Defendants Best's, Davis's, Malkowski's, Hurst's, and Unidentified Defendants' actions constituted offensive and harmful physical contact and were undertaken willfully, wantonly, and without consent, provocation, or legal justification.

94.    As a direct and proximate result of Defendants Best's, Davis's, Malkowski's, Hurst's, and Unidentified Defendants' actions, Plaintiffs suffered unnecessary and substantial pain, serious injuries, and severe emotional distress.

## Count III

### Deliberate Medical Indifference Claim by All Plaintiffs Against HCU Defendants in Violation of 42 U.S.C. § 1983

95.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 84 above.

96.    Defendants Dybas, Fryer, Hardy, Watson, and Unidentified Defendants intentionally failed to provide appropriate and necessary medical treatments to Plaintiffs after their October 6, 2012 injuries stemming from assault, battery, and excessive force.  These failures to act demonstrate deliberate indifference to Plaintiffs' serious medical needs.

97.    Plaintiffs and facility staff made Defendants Dybas, Fryer, Hardy, Watson, and Unidentified Defendants aware of facts from which they could infer a substantial and obvious risk of serious harm, and they disregarded that substantial and obvious risk by

failing and refusing to provide medical care to Plaintiffs and/or providing insufficient medical care to Plaintiffs.

98. Defendants Dybas, Fryer, Hardy, Watson, and Unidentified Defendants acted under color of state law.

99. Defendants Dybas's, Fryer's, Hardy's, Watson's, and Unidentified Defendants' deliberate indifference to Plaintiffs' serious medical needs caused Plaintiffs unnecessary, wanton, and lasting pain.

## Count IV

### Failure to Protect or Intervene Claim by All Plaintiffs Against All Defendants in Violation of 42 U.S.C. § 1983

100. Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 84 above.

101. Defendants Best, Davis, Hurst, Malkowski, and Unidentified Defendants used excessive force against Plaintiffs and/or were deliberately indifferent to serious medical needs.

102. Defendants Ali, Doyle, Renteria, and Unidentified Defendants observed and knew that others were using or were about to use excessive force, and/or that others were deliberately ignoring serious medical needs. They had opportunities to, and failed to take reasonable steps to, prevent uses of excessive force and deliberate indifference to serious medical needs.

103. Failures by Defendants Ali, Doyle, Renteria, and Unidentified Defendants to intervene caused Plaintiffs to suffer harm, including unnecessary, wanton, and lasting pain.

104. Defendants Ali, Doyle, Renteria, and Unidentified Defendants acted or refused to act under color of state law.

## Count V

16

**Assault Claim by Plaintiff Santiago Against Defendant Best in Violation of Illinois Law**

105.    Mr. Santiago re-alleges and incorporates by reference Paragraphs 1 through 84 above.

106.    Defendant Best intentionally caused Mr. Santiago reasonable apprehension of imminent

battery immediately before he sprayed Mr. Santiago with Mace.

## Count VI

**Assault Claim by Plaintiff Rojas Against Defendant Davis in Violation of Illinois Law**

107.    Mr. Rojas re-alleges and incorporates by reference Paragraphs 1 through 84 above.

108.    Defendant Davis intentionally caused Mr. Rojas reasonable apprehension of imminent

battery when he attempted to punch Mr. Rojas.

## Count VII

**Retaliation Claim by Plaintiff Santiago Against All Defendants in Violation of 42 U.S.C. §**

**1983**

109.    Mr. Santiago re-alleges and incorporates by reference Paragraphs 1 through 84 above.

110.    By the foregoing acts, Defendants Ali, Best, Davis, Doyle, Hardy, Hurst, Malkowski,

Watson, and Unidentified Defendants retaliated against Mr. Santiago because Mr.

Santiago filed grievances and engaged in other protected conduct addressing actions of

some or all Defendants and other staff.

111.    The retaliation by Defendants Ali, Best, Davis, Doyle, Hardy, Hurst, Malkowski,

Watson, and Unidentified Defendants would deter a person of ordinary firmness from

exercising First Amendment rights and engaging in protected activities in the future.

Defendants Ali, Best, Davis, Doyle, Hardy, Hurst, Malkowski, Watson, and Unidentified

Defendants physically injured Mr. Santiago, yelled racial slurs, and used offensive

language toward Mr. Santiago, ignored Mr. Santiago's requests for medical attention,

17

actively precluded Mr. Santiago from receiving medical attention, and failed to intervene to prevent immediate and ongoing abuse of Mr. Santiago.

112.    On information and belief, Mr. Santiago's First Amendment activities were the motivating factor in these retaliatory actions. But for Mr. Santiago's First Amendment activities, Defendants Ali, Best, Davis, Doyle, Hardy, Hurst, Malkowski, Watson, and Unidentified Defendants would not have treated Mr. Santiago as they did.

113.    Defendants Ali, Best, Davis, Doyle, Hardy, Hurst, Malkowski, Watson, and Unidentified Defendants acted under color of state law.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request:

A.    A declaration that the defendants have violated the Civil Rights Act of 1871, 42 U.S.C. § 1983, for violations of the rights, privileges, and immunities guaranteed to Plaintiffs by the First, Eighth, and Fourteenth Amendments to the United States Constitution;

B.    Compensatory damages arising from the wrongful conduct of the Defendants;

C.    Punitive damages in an amount to be ascertained at trial;

D.    Costs, expenses, and reasonable attorney fees pursuant to 42 U.S.C. § 1988; and

E.    Such other relief as this Court deems necessary and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand trial by jury on all claims asserted in the above Complaint.

Dated: September 10, 2013                        Respectfully submitted,

/s/ Trevor K. Scheetz
Trevor K. Scheetz
Kyle P. Dolan
Michael J. Faris
Megan C. Fitzpatrick
Andrew T. Gehl
Neal A. Sarkar
of LATHAM & WATKINS LLP
233 South Wacker Drive, Suite 5800
Chicago, Illinois 60606
Tel: (312) 876-7700
Fax: (312) 993-9767

Counsel for Plaintiffs